IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KELLY N. MEILE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>　　　　　Defendant. | CV 15-170-M-JCL<br><br>ORDER |

Plaintiff Kelly Meile this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-33, 1381-1383f.

I.  **Procedural Background**

Meile protectively filed her disability applications in April 2012, alleging disability since July 15, 2010, due to diabetes, nausea, low weight, high blood

pressure, high cholesterol, and diabetic neuropathy. (AR 211). Meile's application was denied initially and on reconsideration, and she appeared with counsel at her administrative hearing in December 2013. (AR 36-145). On April 7, 2014, an ALJ issued a decision finding Meile not disabled within the meaning of the Act. (AR 19-30). The Appeals Council denied Meile's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (AR 8-13). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Meile was 28 years old at the time of her alleged onset date, and 32 years old at the time of the ALJ's decision.

## II.  **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

### III. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ

will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

**III. Discussion**

The ALJ found at step one that Meile met the insured status requirements of the Act through June 30, 2013, and had not engaged in substantial gainful activity since the time of her application in October 2010. (AR 22). At step two, the ALJ

found that Meile's diabetes mellitus, carpal tunnel syndrome, and gastroparesis were severe impairments. (AR 22). The ALJ determined at step three that Meile did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (AR 22). The ALJ then found Meile's subjective testimony only partially credible, and determined that she had the residual functional capacity to perform a reduced range of sedentary work. (AR 24). At step four, the ALJ found that Meile was not disabled because she was capable of performing past relevant work as a cashier and telemarketer. (AR 28). Alternatively, the ALJ concluded at step five that Meile was not disabled because she could perform the representative jobs of charge account clerk and document scanner. (AR 29).

### A. Listed Impairments

Meile argues the ALJ erred because he used an outdated listing when determining whether her impairments were of listing-level severity. The ALJ considered whether Meile's condition met or medically equaled the criteria for diabetes mellitus as set forth in Listing 9.08. To establish disability under Listing 9.08, a claimant would have to show that she had been diagnosed with diabetes mellitus and suffered from neuropathy, episodes of acidosis at least every two months, or visual impairment. 20 C.F.R. Pt. 404, Subpt. P, App 1, § 9.08 (2010).

Effective June 7, 2011, however, the Social Security Administration deleted Listing 9.08 and replaced it with Listing 9.00. See Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. 19,692 (Apr. 8. 2011). Under Listing 9.00, a claimant with an endocrine disorder like diabetes mellitus must show that her endocrine disorder has caused her to meet or equal the criteria of a listing for another body system. See 20 C.F.R. Pt. 404, Subpt. P, App 1, § 9.00(B)(5). For example, a claimant with diabetes that results in neuropathy may satisfy Listing 9.00 by showing that her neuropathy meets or equals the criteria of Listing 11.14 for peripheral neuropathies. See Listing 9.00B(5)(a)(ii).

New listings apply "to new applications filed on or after the effective date of the final rules and to claims that are pending on and after the effective date." Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. 19,692 (Apr. 8, 2011). Because Listing 9.00 went into effect in June 2011 and Meile protectively filed her applications for benefits in April 2012, the ALJ should have assessed Meile's diabetes mellitus under Listing 9.00 instead of Listing 9.08.

The Commissioner argues that even if the ALJ applied the wrong listing, any error was harmless because Meile has not pointed to evidence showing that she meets or equals the criteria of Listing 9.00. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal

Effective June 7, 2011, however, the Social Security Administration deleted Listing 9.08 and replaced it with Listing 9.00. See Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. 19,692 (Apr. 8. 2011). Under Listing 9.00, a claimant with an endocrine disorder like diabetes mellitus must show that her endocrine disorder has caused her to meet or equal the criteria of a listing for another body system. See 20 C.F.R. Pt. 404, Subpt. P, App 1, § 9.00(B)(5). For example, a claimant with diabetes that results in neuropathy may satisfy Listing 9.00 by showing that her neuropathy meets or equals the criteria of Listing 11.14 for peripheral neuropathies. See Listing 9.00B(5)(a)(ii).

New listings apply "to new applications filed on or after the effective date of the final rules and to claims that are pending on and after the effective date." Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. 19,692 (Apr. 8, 2011). Because Listing 9.00 went into effect in June 2011 and Meile protectively filed her applications for benefits in April 2012, the ALJ should have assessed Meile's diabetes mellitus under Listing 9.00 instead of Listing 9.08.

The Commissioner argues that even if the ALJ applied the wrong listing, any error was harmless because Meile has not pointed to evidence showing that she meets or equals the criteria of Listing 9.00. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal

error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *Brown-Hunter,* 806 F.3d at 495. The ALJ in this case erred by considering an outdated listing and applying the wrong legal standard. It is not for this Court to apply the correct legal standard in the first instance and make its own determination as to whether Meile meets the requirements of Listing 9.00. Because the ALJ applied the wrong legal standard, the Court cannot say the ALJ's error was inconsequential and reversal is thus warranted. See e.g. *Christiansen v. Colvin*, 2015 WL 875427 * 3-4 (N.D. Ala. March 2, 2015) (reversing where ALJ applied Listing 9.08 to a claim filed after Listing 9.00 went into effect).

### B. Medical Opinions

Meile contends the ALJ also erred because he did not provide specific and legitimate reasons for rejecting opinions provided by treating physician Dr. Terry Smith and examining physician Dr. Heather Maddox.[1]

1. <u>Dr. Terry Smith</u>

---

[1] To reject the controverted opinion of a treating or examining physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Widmark v.* Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

−7−

Dr. Terry Smith is a general practitioner who saw Meile several times in 2012 and 2013. (AR 376-81, 511-19). In December 2013, Dr. Smith completed a medical source statement form setting forth Meile's functional limitations. He identified lifting and carrying limitations consistent with sedentary work, but wrote that Meile usually had to lie down for two hours twice during the day. He also identified manipulative limitations due to decreased sensation and grip strength in Meile's hands, and indicated that she could never perform handling, fingering, or feeling activities. (AR 522).

The ALJ gave Dr. Smith's opinion partial weight. He adopted the lifting and carrying limitations Dr. Smith identified, but found that Meile had "not lost all ability to use her hands for handling and fingering." He found that Dr. Smith's opinion that Meile could never handle, finger, or feel was not consistent with her activities of daily living or the objective findings of consultative examiner Dr. Heather Maddox. As the ALJ noted elsewhere in his decision, Dr. Maddox observed that Meile's grip strength, finger adduction and finger abduction were all normal bilaterally, her fine manual motor dexterity was intact, and her joints showed no signs of tenderness, effusion, swelling, redness, or increased warmth. (AR 23, 571-77). This was a sufficiently specific and legitimate basis for discounting Dr. Smith's opinion could never perform handling, fingering, or

feeling. Notably, however, the ALJ did not provide any reasons whatsoever for also discounting Dr. Smith's statement that Meile has to lie down for two hours at a time twice a day. The ALJ simply stated that he "does not accept" such a limitation.

While this Court might well be able to provide reasons of its own for discounting Dr. Smith's opinion, the Ninth Circuit has made clear that reviewing courts are "constrained to review the reasons the ALJ asserts" and should not engage in an independent analysis of the medical records. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). It would be error for this Court to identify reasons for rejecting these medical opinions that could have been provided by the ALJ, but were not. *See Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1054 (9th Cir. 2006). *See also Pinto v. Massannari*, 249 F.3d 840, 847 (9th Cir. 2001) (a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). The ALJ erred by not giving any reasons for rejecting Dr. Smith's opinion that Meile would have to lie down for two hours at a time twice a day.

2. Dr. Heather Maddox

Consultative examiner Dr. Heather Maddox saw Meile in February 2014 and completed a medical source statement form. (AR 571-84). Dr. Maddox

indicated that Meile could perform a range of light to medium work subject to certain limitations. Of particular note, she found that Meile had no difficulty reaching but would be limited to occasional handling, fingering, and feeling due to neuropathy. (AR 580).

The ALJ found that except for Meile's ability to lift and carry, Dr. Maddox's opinion was "generally consistent with the objective results of her examination," (AR 27). Although the ALJ specifically stated that Dr. Maddox's opinion was consistent with the results of her physical examination, he did not adopt the manipulative limitations set forth in that opinion. In particular, Dr. Maddox limited Meile to only occasional handling, fingering, and feeling, but the ALJ found without any explanation that Meile could frequently use her "upper extremities bilaterally," which by definition includes the use of her hands.[2] (AR 24). The ALJ erred by failing to explain why he chose not to adopt Dr. Maddox's opinion with respect to Meile's manipulative limitations. Because the vocational expert testified that a claimant who was limited to only occasional handling, fingering, and feeling would not be able to perform any of the jobs the ALJ found Meile capable of performing, the ALJ's error was not harmless.

---

[2] The upper extremities include fingers, wrists, hands, arms, and shoulders. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00(D)(2)(c).

### C. Remand

As set forth above, the ALJ erred because he applied the wrong legal standard at step three and did not provide specific and legitimate reasons for discounting opinions provided by Dr. Smith and Dr. Maddox. Remand is thus warranted.

A remand for an immediate award of benefits is appropriate "only in rare circumstances." *Brown-Hunter*, 806 F.3d at 495. Before ordering such an extreme remedy, three requirements must be met: (1) the court must conclude that the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) the court must conclude that "the record has been fully developed and further administrative proceedings would serve no useful purpose;" and (3) the court must conclude that "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495 (citations omitted). Even if all three requirements are satisfied, the court retains flexibility in determining the appropriate remedy, and may remand "for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Brown-Hunter*, 806

F.3d at 495 (citation and internal quotation omitted).

The record here has not been fully developed, and remanding for further administrative proceedings will serve the useful purpose of allowing the ALJ to apply the correct legal standard as set forth in Listing 9.00. Remanding for further proceedings will also give the ALJ the opportunity to reevaluate the opinions provided Dr. Smith and Dr. Maddox. See e.g. *Perry v. Astrue*, 2009 WL 435123 (S.D. Cal. 2009) (remanding for further proceedings where the ALJ failed to cite sufficient reasons for rejecting the treating physician's opinion); *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (in the exercise of its discretion, the Ninth Circuit remanded for further proceeding "because there may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding [the treating physician's] opinion."). Under the circumstances, remand for further for further administrative proceedings rather than for an immediate award of benefits is the appropriate remedy.[3]

## IV. Conclusion

For the reasons set forth above,

---

[3] Having so concluded, the Court need not consider Meile's remaining arguments regarding the ALJ's credibility determination and the alleged violation of her due process rights.

IT IS ORDERED THAT the Commissioner's decision is reversed, and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 13th day of March, 2017

_____
Jeremiah C. Lynch
United States Magistrate Judge